The first case this morning is 522-0832, People v. Jackson. Arguing for the plaintiff appellant is Matthew Shavari. Arguing for the defendant, Appalee, is Sharon Chanahan. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning. May it please the court? My name is Matthew Shavari and I represent Mr. Jackson. This case is a case in which the trial court described as having primarily circumstantial evidence and poignantly, perhaps the most weakest kind of case a prosecutor can bring. And after making this observation, during trial, the trial court made several fundamentally material errors and ultimately harmful errors about the evidence that constituted the crux of the case. Errors that affected the basis of the court's ruling, errors that resulted in Mr. Jackson's conviction, and errors, consequently, that denied Mr. Jackson his due process right to a fair trial. For these reasons, I ask the Senate will court to vacate Mr. Jackson's conviction and sentence and issue an order granting his release or remand to the trial court for the same remedy or a new trial. Foremost, the trial court's failure to correctly recall the testimony from the state's DNA expert, Mr. Costa Talbot and Officer Hageman is clear in two specific misstatements of the testimony. These misstatements address the crux of the case and that it went to the sole issue of whether Mr. Jackson was in constructive possession of the Glock 44. As made clear in the trial court's ruling, these misstatements affected the basis of the trial court's ruling and ultimately denied Mr. Jackson's due process right to a fair trial. The first misstatement has to do with the DNA testimony of the state's DNA expert, Ms. Acosta Talbot. She stated that all three swabs that were taken contained a mix of DNA from two people, a male and a female contributor. Two of the female contributors were the majority contributor and those related to the grip in the rear sight. She also pointed out specifically that there was DNA from no, that she analyzed DNA from no other person apart from Mr. Jackson to make comparisons. So she didn't have any DNA sample from Ms. Richardson, the woman who lived in the house, or Terrence Harris, the individual whose items were also found in the safe. Counselor, let me stop you for just a second. I'm sure that we all are fully aware of the facts, and you did a nice job in your brief highlight and all those things, and I have some of the same concerns you do expressed in your brief about the trial court's miscues or statements. However, the state points out that in another part of the court's order, the trial court judge specifically goes through all of what you were just talking about. And how is it that that one statement is not simply a misstatement by the judge as opposed to a misunderstanding of the evidence? Yes, Justice. The misstatement, I would argue, is not simply taken out of context. While the trial court went through the testimony, that statement summarizes the trial court's assessment and evaluation of that testimony. So there were, as the state points out, correct references to what Ms. Acosta Talbot did testify to. However, the trial court's ultimate evaluation and weight of that evidence is clear and reflected in that misstatement. And the takeaway was that there's no evidence that anybody else touched the gun. So in spite of that recollection of Ms. Acosta Talbot's testimony, the trial court in that statement clearly relied and focused erroneously on Mr. Jackson's contribution to the DNA. And that's simply an error and misstatement of the evidence. So I would argue that while the state correctly points out that the trial court went through some of those points, that statement was not an offhand or a misstatement. It was a crucial error in evaluating the totality of that evidence. So in addition to the weight of the DNA, another misstatement had to do with the Officer Hagman's testimony regarding the safe. And again, I won't belabor the justices with a reiteration of the facts in totality. But what is clear there are two pieces that contribute to constructive possession, and that's the location of the safe and the content. And as to the location, it was found in Ms. Richardson's bedroom. She didn't deny that. Mr. Jackson, when he testified, made that clear. It was Ms. Richardson that provided the correct combination. There's also unrefuted testimony that Mr. Jackson did not share the bedroom with Ms. Richardson. It was very clear that he slept on the couch in the living or front room. The state makes reference to her being pregnant and makes an unfounded inference that her pregnancy somehow suggests that they did share the bedroom. Biology does not dictate that two people occupy the same room for that to happen. There's no basis in the record to support that. I think that's a distracting attempt to get away from a clear look at the record. So the location of the safe indicates that Mr. Jackson did not have exclusive control over that. He was aware of the safe. He made that clear. We're not denying that he was aware of the safe. And there were also some of his possessions in the safe. Did he also at one point admit that it was his? I believe he he he may have when he was leaving, but there was also testimony that it that that it was not his. So that's that was not a credibility issue for the trial court to make them. Yes, Your Honor, and the as your justices are aware, the trial court did take issue with Mr. Jackson's credibility. And he is one witness, but the misstatements of the testimony were not related to any of Mr. Jackson's testimony. So while we don't deny that the trial court made did express some concern about his credibility, the totality of the evidence, the other testimony made clear that the that the safe did not belong to Mr. Jackson. Additionally, and as defense counsel argued in closing, if the basis for suggesting that Mr. Jackson had possession or control of the safe based on the presence of documents that were his in the safe, that argument should extend to the items that were found belonging to a Terrence Harris. He had a Social Security card, Department of Correction documents in there as well. So if that reasoning were to stand, it is just important or would be just as suggestive that he had, I would argue, more likely ownership or control or possession of the safe. Regardless, the totality of the evidence regarding the location of the safe and its contents would fail to suggest that Mr. Jackson had exclusive control over that and that would extend to the gun. And that would fail as far as the argument of constructive possession. So regarding that, specifically with the trial court's denial of the motion for a directed verdict, that, too, was there because even in considering the light most favorable to the state, the evidence would not support a finding of guilt beyond a reasonable doubt for. So for both those reasons, we believe the trial court erred in making both those statements and denying the motion for directed verdict, for which reason we ask this court to reverse, vacate Mr. Jackson's conviction and sentence, order his release or remanded the trial court for the same remedy or a new trial. Thank you, Mr. Shafari. Justice Bowie, any questions? Not at this time, thank you. Justice Barberis, any other questions? No more, thanks. All right, thank you. Thank you. Ms. Shanahan, you ready to proceed? Yes, Your Honor. I understand you were ill this morning. Are you able to? I'm here. All right. I'm here, that's what I'm going to say. If you need to take a break, let us know. All right, you may proceed. The first thing I'd like to point out is that defendant argues that this case should be reviewed for harmless error. And that's simply not true, because as discussed in the state's brief, this is a plain error case. It was not preserved in any way. Defendant doesn't argue plain error. He doesn't argue forfeiture. He doesn't argue the Sprinkle Doctrine. He just he does argue a case called Williams. I won't go into that in depth at this moment, because I think I've covered why Williams doesn't apply. But the difference in the standards of review, the difference between plain error and harmless error is very important, because it's plain error. That means it's defendant's job to prove that something went wrong. It does not mean that the state has to prove beyond a reasonable doubt that it was right. So that's, as I say, I've discussed that in my brief. And but I think it's important enough to to point out at this point. I would like to note that this judge wrote a very thorough seven page order in this case. I don't mean to stop you there. I looked at the record again this morning and the report of proceedings. I couldn't find a written, say, judgment order. Now, I saw in the record of proceedings where the trial judge made his findings on the record. But I could not find the written order. And maybe if you could if you have a site to that, I'd appreciate it. I don't have it in my notes and I I'll let me I can get it to you if I have it. I'll put it that way. But I will say he made a very thorough. Maybe this is what I've done. Maybe I read seven pages of transcript. That's probably probably what happened. Anyway, it was a thorough ruling. He didn't just flip off. He would everything went through everything that happened in this case. The first point I'd like to make is that the judge did not say that this case was the weakest case a prosecutor could bring. The trial court said that in general, constructive possession cases are which are based on circumstantial evidence are the weakest kind a prosecutor can bring. I think that's a point worth noting. The other thing is, is that defendant focuses on the penultimate paragraph of the trial court's ruling and ignores all the other pages. For example, the what has been pointed here, if it was just the DNA on the gun, it would not be enough for guilt. So it's a little hard to say that this. Brief, very brief comment later on. Totally does away from everything else that the judges said in his rather lengthy ruling. And at page 203 in the transcripts, the trial court discussed the DNA in depth and noted that there was a mixed sample on all three locations on the gun. One, I'm sure if it was two males or male or female, the two other, it was a male and a female. And it could have been the Keisha Richardson's DNA. We don't know. But there's a male as well. It's circumstantial evidence, even though it's not high probabilities that the defendant at least touched the gun at some point. So that's what he said about the DNA. As you also pointed out. The defendant admitted several times that the gun was his. In fact, that was one of the things that caused the judge to doubt the defendant's credibility. He would say. He owned the safe and then he would say, no, it's not mine. And then he would say, yes, it is mine. And then he would say, no, it's not mine. He initially said, that's my safe. Give it to me. And they said, that's fine. Open it up. Well, that'll prove that it's yours and you can have it. Well, then all of a sudden it wasn't his. And he just. At one point, they asked after that, he got so upset about the whole thing that he fled, which, as we all know, is evidence of guilt. The other thing is, is that more than one person can have exclusive possession of an item, particularly when you're looking at an item in a house that two people who. At least have a man and a woman who have lived together for a year. And during that time, sometime I've had relations sufficient to. Have a child. He knew it was there. The fact that she knew the combination. Doesn't mean that he didn't. It just meant that he wouldn't say what it was. And then the. Going to the courts comment about. Who had the. Gun, I mean, excuse me, who had the access to the safe. I'm sorry. I've reached one of those points. Let me see if I can get back on track. Oh, the safe. When the judge said that it was only the defendants. DNA on the on the safe. What he'd been talking about immediately prior to that is that it wasn't Letitia's. Letitia had nothing in it. It was not Letitia. So if you're saying, I don't know whether this is Letitia's or defendants, but there's nothing to indicate Letitia touched it. And there is something that says that the defendant touched. Well, there is something in the fact that she knew the combination. Yes, but that doesn't mean that he didn't know it. No, but it doesn't mean that she didn't have some possessive right to it if she knew the combination to safe being. I'm sorry. So the safe to secure your personal belongings, you wouldn't give it to someone who doesn't own it, perhaps. Although I know what you're going to say. They shared the house. They shared the bedroom at one point. Perhaps they have a child together. She probably knew his combination to his safe and have access to it, even if she didn't own it. Well, I would go even a step beyond that and say she can have possession of that safe. She can have constructive possession of that safe. But so can he. It is not a either her or him situation. That's what I think is crucial. Did you earlier say that he had admitted several times that the gun was his or the safe? The safe was his. OK. He did, though, admit did when they were taken to the station, didn't he say to one of the officers, I did touch the gun? Yes. He did. And there is, although not. I mean, again, like the judge said, there wasn't enough DNA evidence to for that alone to be enough. But there was only a one in nineteen hundred. I believe it was chance that it belonged to someone else. That's not the kind of DNA results that we normally look at where the result is in billions. But it's just this is a case where there are. A number of facts that when you add them up together, they equal constructive possession. Are there any other questions? This is really no questions. Barbarous. No, thank you. All right. Thank you. Shanahan, which is very rebuttal. Yes, justice. Thank you. First, I'd like to take up the issue of the harmless versus plain air. So it is anticipated and understood that the state would argue that harmless air shouldn't apply because that would, if the justices would agree, would relieve them of the burden in that case. But as we pointed out in the case law, that isn't the case for two reasons. One, Mr. The state claims that Mr. Jackson failed to make a timely objection at trial or to raise the issue in a post trial motion. There's Williams, and I'm referring to specifically the 2013. It'll at first 111116 Williams, not the 27, 2017. That clearly states that a defendant does not need to interrupt the trial court. After they've just argued the same to the court. So that that issue was raised at trial. The defense counsel did not have a burden to interrupt the court. So that is not waiving the issue. At that point, Mr. Jackson also filed a post trial motion that indicated that the there was air. Air based on. It was very generally stated, but Williams again says that there's no requirement that the post trial motion have any particularity about the or elaboration about the type of air. So we would argue that Mr. Jackson did not forfeit the issue that the harmless air is the correct standard in plain air is not appropriate in this case. Secondly, as to just a few points regarding the state's statements, Mr. Jackson did not admit owning the gun. What he said was that he may have touched the gun once. And that's the record at 143. Also, the. That Miss Richardson knew the combination, it is an unfair inference, and I don't think one supported by any testimony that Mr. Jackson knew the combination would be convenient if he did any were withholding it, but there's simply no record basis for that. Additionally, if the argument is that more than one person can share constructive possession of the safe, then that should extend to Mr. Terrence Harris, whose items were in there just as well. So it is it's not down between Mr. Jackson and Miss Richardson. If that logic were to apply, we have to add Mr. Harris into that as well. Given the documents that were in there. And then lastly, the state pointed out that regarding the DNA, that there was a related to the, and I believe this is the, the trigger that there's a one in 1900 chance of there being a cherry picked from just one of the three swabs. There's another swab in which the chance of a random person being picked was just one in three, and another one in 350 people. So the one in 1900 is certainly the best statistical odds to support the state. But again, that that's a cherry picked reference and counter to analyzing and considering the totality of the evidence. So the totality of the evidence in this case, what was presented at trial, what's in the record is that there were there were clear misstatements. The length of the trial courts iteration, whether it's seven pages of transcript or however many minutes that that took to to give orally, you know, quantity does not undo or beget quality. Those statements, while misstatements were certainly not the only statements uttered by the trial court, but they're important. They addressed the crux of the case, which is a singular issue whether Mr. Jackson had constructive possession of the Glock 44, and they clearly affected the trial courts basis for the ruling, and the ultimate ruling of guilt, for which reason that was an error. We would ask that the justices here see that that was an error and vacate Mr. Jackson's conviction and sentence and order his release. Thank you. Questions from other justices? Justice Bowie or Barberos? No. No. Right. Thank you. We appreciate your arguments. We'll take the matter under advisement and issue a decision in due course.